The Honorable, the Judges of the United States Courts of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Courts of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention before the Court is now sitting. God save the United States and this Honorable Court. Be seated. All right. The first case we'll hear today is Barton v. House of Raeford Farms and Mr. Stein. We'll hear from you. Good morning. Please the Court. I'm Larry Stein and I have the pleasure of representing the House of Raeford. We're here on two fundamental issues, one related to the South Carolina Payment of Wages Act and the other the South Carolina Workers' Comp Retaliation Act. I'm going to start with the South Carolina Payment of Wages Act. Our main position on this is that this proceeding should have never gone to a jury because the action is preempted by Section 301 of the Labor Management Reporting Disclosure Act. That provision, 29 U.S.C. 185, says that suits of violations of contracts between an employer and a labor organization representing employees is a federal matter and the Supreme Court in Alice Chambliss has said that this exclusively to the federal courts so that they can develop consistent patterns of the law throughout the entire 50 states. The court allowed the case to go to a jury and allowed the court to back wages, treble damages, and attorney fees. The operative sections for South Carolina Code 41-1040 and 50. The reason 41-40 and 50 are operative is under 41-10-80C, back wages can only be awarded for violations of those two sections. So the question becomes then what are the wages due? That's what the South Carolina Wage Payment Act says. And the South Carolina Wage Payment Act does not create any independent rights. It only gives an enforcement mechanism to assure that employers pay wages due. So the issue becomes in this particular case, all the plaintiffs were governed by a collective bargaining agreement. And in the terms of that collective bargaining agreement, the wage rates are set, the terms hours worked are set, and the break. Did the plaintiff employees bring a grievance to the union to be presented to be considered under the collective bargaining agreement? No, Your Honor. Never did. They never brought a grievance that was raised and asked. Nobody ever brought a grievance. Never took it to arbitration. Never used the collective bargaining agreement proceedings. They went straight to federal court. And the problem is, of course, the contract provides for arbitration and grievances. It has a provision where if something's wrong with the time, the union has the right to investigate it. The breaks, the two 60-minute breaks, are governed precisely by the contract. And the question about hours worked is clearly an issue for the collective bargaining agreement. It sounds to me like this case started out as a donning and duffing. I mean, basically what we had decided in recently while this case was pending. And I would have thought that would have made everybody would have resolved the disputes, but I guess some of the other issues were pressed. Well, Your Honor, on the FLSA, the district court did grant summary judgment. They did find that the practice was to pay on either line time or scheduled time. That's not before us, is it? No. What's before us is the state claims and there's a preemption question. Correct. You won on several claims, right? You won on several claims that aren't on appeal. That is correct. There are workers. There's no cross appeal here. Correct. No cross appeals on the Fair Labor Standards Act. Part of the thing about the FLSA is the court below found that there was a collective bargaining agreement. It found that all the employees were covered by the collective bargaining agreement. It found that the practice of the company in the union was to allow line time. Now, what the court did in allowing it, I think in a lot of ways, if you look at her order on treble damages, the court lays out two points as to why they believe this case was correctly done. She explained it before that, didn't she? That was later on. It was later on. And I think in a lot of ways this is very informative. I think it helps understand what was going on. And she indicates that she did find that there was a collective bargaining agreement. She did find that there was practice. But what she said is that the agreement was silent as to line time. But, Your Honors, the problem is in labor arbitration, no contract covers everything. And what do courts do when there's an undefined term? Like what is hours worked? They look at the practices and the contract to make a determination of the union contract. You think that you say this ought to go into an arbitrator rather than a court rouse? Absolutely. It should have gone through the grievance and arbitration proceedings and not in this particular act in this way. This act is just completely preempted. Because she basically, when she grants the treble damages and attorney fees, she justifies the verdict by saying that the collective bargaining agreement, yeah, it did find there was a collective bargaining agreement. You only get to the treble damages and attorney's fees if there is no preemption. Correct. And then there's another issue as to what the legal standard is for granting treble damages and attorney's fees as opposed to simply a recovery of lost wages. That's correct. Yeah, under South Carolina there has to be no bona fide dispute. And the court did find there was no bona fide dispute. But her justification was we violated the wage hour regulation, 29 CFR 785.118, which is particularly baffling since she had granted summary judgment to us on the middle breaks, and that was the regulation at issue. So it's odd. But the problem is the two fundamental issues are right in the contract. In order to determine what the contract is between the employer and the unionized facility and the employees, you have to look at the collective bargaining agreement. As soon as you get an interpretation of the collective bargaining agreement, the Act preempts the South Carolina Wage Payment Act. At the same time that we're trying this case, another judge in South Carolina in the Anselo case found that the South Carolina Wage Payment Act was preempted by Section 301. Federal judge or state judge? Federal judge. Charleston, Your Honor. I don't remember her name right off the bat, but it was South Carolina, Charleston Court. And I have cited that case in the brief, the Anselo case. Even if you were to prevail on the preemption argument, the retaliation damages under the Workers' Compensation Act, that's a separate issue. That is correct, Your Honor. You know, basically that is in a nutshell what we have on the South Carolina Wage Payment Act is everything in there is related to wages. The plaintiffs argued that we violated the notice provision. While we disagree that we even violated the notice provision, the problem is the award of back wages, travel damages, and attorney fees under South Carolina Code 41-1080C is limited to 41-1040 and 41-1050. Both of those, the language is you have to pay the wages due. And if there's anything fundamental in a collective bargaining agreement, it is it defines the wages and terms and conditions of employment. And the judge used the notice hook, is that what? No, no. The judge did not use the notice hook. The plaintiffs argued in their appellee brief, Your Honor. That's what they were claiming was not preempted. But there's no private right of action. Under the 10, the only thing is if you look at the statute of 41-1080, you will notice that if you have a violation, you have to get a warning by the South Carolina Administrative Agency, and only after the warning can you be assessed a fine of no more than $100 per violation. But wasn't he fined? I saw it here. That's not what happened here. That's not what happened here. They brought the claims in their own name. That's right. And they brought it in their own name. You say that's an exclusionary remedy then, that the only one that can do anything about it is the director of the South Carolina Labor Department? On 41-10-30, yes, it is. If you read 41-80, you'll see the statutory scheme is for violations of 41-10-30, the State Administrative Agency handles it, and there's got to be a written warning first before there's even a fine. Then if 80C. So you're saying the most could happen to you is a fine of $100? And that is only if the South Carolina Agency has given us a written warning. I know. But the fine is limited to $100. Right. But yours says it's an exclusive remedy. That's right. There's no remedy like that. It's exclusive to the State of South Carolina, and in 80C it gives the employers a private right of action under 40 and 50. So the fact that their argument we violated the notice provision, which I don't believe we did, and, of course, if it's preempted, the attorney fees, treble damages, and back wages are vacated. And I'd like to move to the workers' comp retaliation very quickly, if I may. There are some legal errors made. First is the institution of workers' comp proceeding. The judge has expanded the definition substantially. South Carolina had a limited definition. It struck me looking at both the institution prong and the causation prong that there was no South Carolina precedent that seemed to say what the district court judge said. There is not. I wondered whether the parties had explored among themselves or with the district court certifying a question to the South Carolina Supreme Court for them to answer the question under state law as to what the standards were. We did not, nor did the court. But what happened in it, Your Honor, is that Case Johnson v. J.P. Stevens takes it beyond just a formal filing of the workers' comp proceeding and lays out some opportunities. The judge then expanded that and fundamentally says if they go to the nurse for treatment, which could be as little as first aid, and go to a company doctor, I mean go to a private doctor, that can be an institution of a formal workers' comp proceeding, which strikes me as that could be virtually, it changes the act from buying a workers' comp proceeding to giving them protection for an alleged workers' comp injury. And it's a great expansion. And the South Carolina Supreme Court in that Johnson case did not expand it that way. It gave it a very limited. And under those circumstances that the South Carolina court limited, you kind of know they're asking for it because there's a bill for payment. Now you know it's into a workers' comp. But the Johnson examples aren't exclusive. I don't think they're exclusive, but I think they inform us as to kind of what they're looking for. They're looking for something to give some notice to the company that the employee is in this.  Yeah, it gives two examples. But both of those examples, Your Honor, give a notice to the company that the employee is proceeding under a workers' comp, in the sense that they're submitting bills for payment under workers' comp, or they've done something where there's a formal notice. In this one, there's not that. All they've got to do is be told, no, this is not a workers' comp injury, and go to a private doctor. But that's the point, Your Honor. He had the bench trial over. That's correct. It lasted about six days. Yes, Your Honor. And the judge had an opinion on it. Yes, Your Honor. He did. He did. All right, we'll see you back on the rebuttal. Thank you. Ms. Bloodgood? Thank you, Your Honor. My name is Nancy Bloodgood. I'm a partner with the Foster Law Firm and practice in Charleston. My partner, Robin Foster, who practices in the Greenville office and who also tried the case, is with me today. I'll address the preemption first. Section 301, of course, is intended to ensure that state laws do not interfere with any type of agreements that have been agreed upon in a collective bargaining process. However, Lingle is clear that Section 301 does not impact on substantive non-negotiable rights that are provided by state law. And the Caterpillar case also said that plaintiffs who are covered by a collective bargaining agreement can still assert legal rights that they obtain through state law. Now, South Carolina doesn't have a lot of state laws. Why wasn't this claim brought just as a garden variety grievance under the collective bargaining agreement? Because, Your Honor, the grievance provision of the collective bargaining agreement, as Judge Childs found, only addresses disputes regarding the interpretation of the contract. And whether or not line time is not in the contract, and the contract... Is there a wage and hour disputes in every collective bargaining situation that come up every day that aren't covered per se in a contract? And this is not an argument about what they were paid. We agree they were paid line time. We're not disputing that there's a problem with line time. What we're saying is that we have a notice statute in South Carolina, and what that notice statute says to an employer, when you are going to hire an employee, put in writing the terms. Are you saying that the state could do it without a right under the collective bargaining agreement? There was nothing to grieve because what the issue before in the violation of the state law is whether the employee at the time of hire, whether the employee's conduct and knowledge was false. Did the employer tell the employee the terms of employment or not? And contrary to what Mr. Stein... Line time was the permitted wage, but there's an additional wage due above and beyond that. No, Your Honor, and the reason is because of what the state statute says. Contrary to what Mr. Stein... That's your measure of damages. The state statute, the only significance of being paid by line time is that's how you calculate your damages under the state statute. If an employer does not tell an employee the correct terms of employment, if you say that you're going to get paid nine-hour shifts, you're going to get paid this, you've got to punch in and out, you've got to clock in, and we're not going to tell you that you're getting an hour taken out every day for your lunch break, and then the employer, the employee finds out after the fact, well, I'm not getting paid for nine hours, and I'm getting an hour taken out every day, and nobody told me that. In fact, the handbook says it's clock in, clock out. The posters say that I'm paid by the time clock. Does it say you have to be fully dressed when you clock in? It doesn't say anything about that, Your Honor, and I would differentiate this case from the Anselmo case, which was Judge Seymour's case that Mr. Stein referred to, because in that case the court found there were 30-minute bona fide meal breaks in this case the court found, the jury found, that the breaks were actually less than 20 minutes, so it's an entirely different situation. But the collective bargaining agreement provides that you'll get 60 minutes allocation between meal and rest times to be allocated by the company. Now, if this is not being correctly done, then you could challenge that under the collective bargaining agreement. But the issue here is we have a state law that grants a right, a substantive right to an employee to be told the truth at the time of hire. Is that under 30? That is under 30. Isn't that just an administrative under 80 that should be handled administratively? No, Your Honor. 411030 says an employer shall notify an employee in writing of the normal hours and wages agreed upon. Then 411040 says that the wages due as required by 411030. So 40 goes back to 411030 and says the wages due are the wages that you were notified about within the statute. That brings me to the damages calculation that you have to claim because there is no individual contract right, as I understand it, under the South Carolina statute. You have to claim contract right damages, and the contract is a collective bargaining agreement. And your measure of damages is we were paid line time, which is less than the contract value of our time, which is clock in to clock out, by reason of the deficits in these breaks. It's not a contract, Your Honor. It's a statute that puts an obligation on an employer. It doesn't give you a contract right recovery, and that's my point I keep coming back to. And with all due respect, I don't think you've answered the question yet. You have a contract measure of damages, which means you have to look to the contract to find out what that measure is, and that's what brings you to the preemption. There isn't a separate measure of damages unless you can cite something in the South Carolina statute for the South Carolina Supreme Court precedents that gives you that right. The only reason that you have to look to the collective bargaining agreement, and actually line time is not even in it. It's by custom and practice. But there's no reason, in fact, you would look to it. And if the fact that they're paid by line time is just a fact, it has nothing to do with an interpretation of the collective bargaining agreement. You don't have to take any facts out of that collective bargaining agreement to know that at the time they were hired, they were told something different than the way they were paid. And 413010 says that what you are told is what you're supposed to be paid. And the penalty for that, it's not really a contract damage. The penalty to an employer who ignores the law, who violates the law, and does not tell an employee the truth about their wages at the time of hire is that you look under the way that the agreed upon wages or the wages due, and then ADC again says the wages due as required by 411040. Well, that, of course, incorporates the idea of the wages notification, the wages at notification, not the wages under the CBA, but the wages that were told to the employee at the time of hire. It would have been very easy for Columbia Farms just to say, you have to work nine-hour shifts, and they're going to be flexible. We can't tell you, you know, they're going to be changed from day to day. But you're going to be paid line time. Of those nine hours, you're only going to be paid seven and a half or six and a half because we're going to take out an hour for breaks that are going to be 30 minutes, and the court found they weren't. And we are then going to pay you, you know, come from nine to six, but we're only going to pay you when you're on the line. But they didn't do that. In fact, not only did they not do that, they put in their handbook that you were paid by clocking in. They put in the posters. It was very deceptive. And that's the only thing the state says, don't mislead an employee because an employee has a right to make an educated decision about where they want to work. And if they think, I have to be there nine hours, but I'm only getting paid when the chickens are on the line, I'm going to go look for another job. And under the state statute, the penalty to the employer for misleading or providing inaccurate information is under ADC to say, well, let's look at what they were paid, which is custom and practice line time. Let's look what they were told, and let's take the difference, trouble the damages. It's very similar to the Levatas where the ‑‑ I don't think that's what the statute says. You have to prove additional elements to get trouble damages and attorney's fees. Yes, Your Honor. It's discretionary with the court. You have to have a bona fide dispute. Point us in the record to where the court made those findings. A little bit above just the recovery damages. Okay. In entry 172, which is the order on trouble damages, it's also in the appendix 119 to 125. That's the sum total of it? That's her opinion of July the 12th? That's her trouble damages opinion, yes, Your Honor. Last year? Yes. Okay. Now, the calculations that's based on came from the jury award? Yes, Your Honor. They had a jury trial, and then she took the jury trial and studied on it and wrote the order and opinion that dealt with the trouble damages. That's right, Your Honor. And the jury based its numbers on wages set forth in the collective bargaining agreement? They based it on what the plaintiffs were paid, which was line time, what the actual payment, and then, no, a document that was presented called Terms of Employment, and it cites the South Carolina Code that said you were going to have nine-hour shifts, and then the handbook that said you're going to be paid punch to punch, you're going to be paid by the clock. What was the hourly rate? The hourly rate was different for each of them, but it was about eight to nine. It came from where? That came from the Terms of Employment document that was handed to the employees at the time that they were hired, and that really isn't in dispute. The hourly wage is the hourly wage, and the issue is how many hours. Was that fixed by the CBA? Yes, Your Honor. So the rate that's used to calculate the jury verdict came from the collective bargaining agreement? It did. All right. But that's all that came from. And then the judge used the jury award simply, the question was whether it was going to be multiplied by three to get triple damages. That was his opinion of July the 12th. Yes. I mean, those ranged from, what, several thousand dollars down to in the hundreds. Yes. It's different for each person. What Judge Childs found was the things that were missing in the collective bargaining that were essential to determine the damages per the state law was, how do you calculate the hours worked? Are you doing it by the line time or are you doing it by punch in and punch out? CBA is silent on that. So you can't have preemption. We recognize that line time is custom and practice in a collective bargaining agreement. We did that in the Sepulveda case. Yes, Your Honor. But we're not disputing that line time is how they were paid. But that was a custom and practice that became part of the collective bargaining agreement. Yes. But just because that is how they're paid doesn't mean you have to interpret the collective bargaining agreement. The only significance of the fact that they're paid through custom and practice is it's different. But it means you could file a grievance. The grievance section of the CPA? The significance of having a collective bargaining agreement in the federal law is to have a uniform practice by which the wages and hours are negotiated and disputes about the payment of hours and wages are negotiated and you have a grievance procedure and you have a process in the federal courts. It seems to me for some reason you want to bypass all that. No, Your Honor, not at all. I understand the significance of 301. You don't think the line time could be grieved? I think that the state of South Carolina requires employers to tell employees the truth. I'm asking you, do you think the line time could have been grieved? In this case, it could not have been because the grievance procedure in the CPA, as Judge Childs found, did not address how hours worked were calculated, nor did it address whether breaks less than 20 minutes should be paid. Did the customer in practice have line time under the CPA? She found that the employees were paid. She said it was a practice? Yes, Your Honor, but what she did not find and what she clarified in her order, she did not find that that's what, under the South Carolina Payment of Wages Act, the employees were told they would be paid. And so there is a misrepresentation and there is a separate substantive rights given to employees in the state of South Carolina not to be misled like that. The reason that they couldn't grieve it, she did find... But then it goes on and says the person who remedied it is the director of some agency, and if they don't listen to it, they get a $100 fine. No, Your Honor, there is a private cause of action. There's a case in South Carolina called the Evans v. Taylor made sandwich case, which is almost directly on point where the employees were told, we're going to pay you $0.61 per sandwich. They start working. They find out. They get paid. The sandwich case, and you cited in your brief, that's what you're relying on. Not only that, Your Honor. They put two in each package and they paid them by the package rather than the sandwich. And the court found that that's wrong. If you tell someone you're going to pay them by the sandwich, pay them by the sandwich, or else come in and give them other written information that you're going to pay them a different way. In this case. That's what you're relying on to say. That's the case you rely on for the proposition that there's a private right of action. Well, the reason that there's a private right of action is if you read 30, 40, and 80 in conjunction, 40. Section 40 refers back and incorporates Section 30. And Section 80C provides for a civil cause of action. And, yes, it cites 40, but 40 incorporates 30, which is the notice statute. And there have been numerous cases in South Carolina regarding an employer's responsibility under this statute. So there is a private cause of action. Let's assume you're right on the preemption question. What entitles your clients to treble damages and attorney's fees? The court, well, for treble damages, there's got to be a dispute, and it can't be a good-faith dispute. The judge found that because the employer ignored the law and because- It's at the bottom of 123 in the appendix. Let's see. I thought the South Carolina cases required finding the equivalent of bad faith to make that award, and I just don't see that here. Well, the judge, I mean, what the judge just found was evidence of the bad faith was that they were led to believe that they were going to be paid one way and they were paid another. It was in the handbook. It was in the posters. She found that there was a violation of the law. There was a disregard for the law, and she found that that was bad faith. Where is that? I'm still not seeing that. In the motion for treble damages, she says the court finds no bona fide dispute. Are you talking about the order? I'm looking at the order, which is from 119 to 125, and so it probably is, Your Honor, from 123 at the bottom. The second full paragraph says the court finds that no bona fide dispute existed regarding the wages due to plaintiffs, and, of course, bona fide is defined as good faith. Neither the CBA nor the terms of employment provided to plaintiffs indicate that they were to be paid according to line time. At trial, the plaintiffs presented evidence that Columbia Farm led them to believe that they would be paid based on the amount of hours that they clocked in and out, and she found it wasn't only the terms of employment that says it's per the South Carolina Payment of Wages Act. It was also a handbook was given out at orientation, and the handbook says you will be paid by the clock, so there were other things. This is what you say is the finding of bad faith. It's evidence of bad faith. No, what I'm asking you is that this paragraph at the bottom of 123, that is your basis to say that the bad faith requirement under South Carolina's law is met.  Where's the handbook? Do you know? Remember what page that's at? The handbook? Hold on. That's okay. I don't want to take your time. I thought you might. The handbook is at the appendix 1434, and what it says is the purpose of the time card is to ensure an accurate record of all hours you work. It is our policy that all work performed by you will be while you are on the clock. She found that statements like that and posters evidenced a lack of good faith, and I think that that's enough. When you have an opportunity. Did she ever use the term lack of good faith? No, she didn't, Your Honor. The term bad faith I see in one of those parentheticals. Most of the time the term is bona fide dispute. Whether or not there's a bona fide dispute was what the issue was, at least as Judge Childs understood it, I guess, that she found there was none. That's right. Let me ask you something. I asked you earlier. This is what I thought. I asked you earlier whether they had to be dressed before they punched the clock, and you said there's not, but I'm now reading just where you referred me, and it says you must be dressed for work when punching in or out, which is tantamount to line time. You go into the locker, you get dressed, and then you go in to get to punch the clock and go on the line. Your Honor, the testimony at trial, there's a big room where you go and get dressed before you clock in. Some people would clock in and get dressed. Some people would do either. I understand, but if you notice that you're supposed to be dressed before you clock in. Yes, Your Honor, it does. All right. Well, then I don't understand what the fight's about. I mean, you were just arguing on the basis that it was unclear to them whether they had to be dressed and prepared for work. Line time and clock time are the same in this case. No, actually, after they clocked in, they had to walk through halls, and it took them a while before the chickens came. You can't clock in at the line. You have to go where the clocks are, and they were being paid on the basis of dressing first, punching the clock, and going to the line. That's line time. But what they were told at the time of hire and what the state of South Carolina requires is that you tell somebody how you're going to be paid, and they weren't told that. They weren't told there was going to be a deduction taken every day. They were told you're going to work nine-hour shifts. They took an hour deduction for alleged 30-minute breaks. Well, that's covered in the CBA explicitly. That is in the CBA, but the fact that whether or not 20-minute breaks or less than 20 minutes were paid is not in the CBA, as the judge found. That's a dispute over whether the allocation was appropriate. But we're talking about two different things, and I must say I feel like I'm being manipulated a little bit because the judge found that line time was a practice. They all knew line time was a practice, and I understood line time to be that you clock in after you get dressed and just before you go to the line. And there's no other time you could punch in. You have to walk to the line, obviously, to your position. And that's line time, and that's what was being followed, and that's what the handbook says. The handbook says you must be dressed for work when punching in and out. What they were told when they were hired, at the time of hire, was you're going to work nine-hour shifts, you're going to get paid a certain amount per hour, and then when they got there, they got paid less. And so there is a violation of a state statute. I don't understand what you say they're being told. They were told in the collective bargaining agreement about breaks, times, and lunch breaks. They were told about clocking in in the handbook, and none of these apparently were violated. The argument you filed initially was that donning and duffing should be payable time. But we handled that in another case during the course of this action, and in my judgment, that should have ended this part. But now you say, well, that notice was inaccurate. There was a fraud committed, a bad faith statement. And it looks to me like they were told exactly what was being done. Your Honor, what I'm trying to do is to distinguish between a collective bargaining agreement and a state law that grants substantive rights. I don't want to talk about the state law until we understand the facts. And the facts of the case is that the collective bargaining agreement addressed wages, addressed what they're being paid for, the allocation. If that was breached, that could be grieved. The issue of clocking was then where you were arguing, line time versus clock time. And I'm suggesting to you that if you read the employee handbook, they're one and the same. I asked you early on in this argument whether they had to be dressed, and you said no. And it seems to me that they do have to be dressed when they get clocked in. I may be wrong, but this is what I'm seeing in the handbook. I'm just telling you what the testimony at the trial was. Was the testimony different than that? Yes, it was. That you didn't have to be dressed? Well, that they clocked in at different times. Well, except that if you're going to go to the testimony then, as opposed to what they were told by the handbook, then you're going to confront the court's finding that the custom and practice was that line time was charged. And, Your Honor, all that they had to do was say, here's our custom and practice, here's how you will be paid, so that the employee could make an educated decision as to whether or not. Don't you think this tells them if there's a dispute as to whether they get dressed first or later? It seems to me the handbook says you are required to punch in and out of your own time according to your schedule. Under no circumstances are you to punch another employee's card or permit them to punch yours. You must be dressed for work when punching in and out. And they may have inferred from that, but the testimony was that they did not know that. They thought they were being paid from punch in to punch out, and they were not. The handbook required us to notify them. All right. The collective bargaining agreement. I understand your position. Thank you. The workers' comp retaliation claim? Well, you run out of time. All right. Thank you. Why don't I give you two minutes on the retaliation? I want to address the instituting proceedings. Since 1985 in the Hanks case, which is a Court of Appeals, South Carolina case, the courts have said there's no particular way that you institute proceedings. It's important in a workers' comp scheme that the employer's liability be decreased and the period of disability be decreased. So the sooner you do it, the better. The J.P. Stevens case said that these types of conduct will be allowed as well. All that Judge Child said, who was a workers' comp commissioner and very familiar with how workers' comp claims work, is that if you have factual circumstances, and this is done on a case-by-case basis, which would lead to an inference to the employer that there is a workers' comp claim, that could be enough to institute proceedings. What was the inference here other than there was a claim of a work-related injury in the discussion with the plant nurse? In this case, there were multiple complaints. A list was kept of employees who went to the nurse's office, and then they were fired. Some of those employees were fired. If you went to the ER because the nurse, who had the sole authority to tell you to go to the company doctor, testified she didn't believe carpal tunnel or sore hands was a workers' comp injury. But if you went to the ER because she refused to send you to the doctor, then you were pointed out. So she knew, and they would come back with ER notices and private doctor's notices. She was on notice that employees were leaving, coming back with sore hands, and she still was refusing to identify this as a workers' comp. That doesn't cover all the plaintiffs that were left in the case. It covers a couple, but not all. What's your best South Carolina case that substantiates the standard that she used here for institution? I think it would be J.P. Stevens, where she says these types as well, and Hanks, which says that there's no particular way to do it, the combination of those two. If you have an employer who refuses to acknowledge the law, that doesn't allow the employer to avoid the law, and that's exactly what was happening here. We actually have a statute about repetitive trauma and that those are injuries covered under the workers' comp statute. But she insisted that they were not, and therefore, because they weren't workers' comp, they got points, and these employees all pointed out eventually. Had they been treated as workers' comp incidents, then the employees would not have been pointed out. Is there a South Carolina case that says that a dispute over whether or not something may or may not be workers' comp, that qualifies as instituting a claim? Not that I know of, Your Honor, but it's a factual. If someone comes to you and says, my hands are sore, and you say that's not workers' comp, I think that violates 42-1910, which is a state statute that puts a duty on the employer to recognize and to try to provide medical care and not to say, I refuse to acknowledge that sore hands on a production line is a workers' comp scenario. So here we had this over and over and over again, employees just getting biofreeze rubbed on their hands and going to the emergency room and coming back. And so there was plenty of notice to the employer. There was also a rotation policy. And so if things are so bad that you're rotating people off, that should be some sort of notice to you that you've got a workers' comp situation here and that you have responsibilities under the law to acknowledge this. Under the test that the district court judge used, what instance of a claim of work-related injury would not be counted as instituting a workers' comp claim under the retaliation statute? Well, anytime you show up and say, I've got a problem and it happened while I was working, that's the way it sounds to me. No, Your Honor, you can certainly terminate. Does it have to be a pattern? No, you can terminate. Well, you said that's what you had here was a pattern. We had a pattern that should have put the nurse on notice and the employer on notice that there was a problem with people's hands when they were working on the line and it was related to the work. But you can certainly terminate an employer, an employee who's on workers' compensation. But the premise is that you've acknowledged and it's workers' comp and they're getting temporary total disability benefits. That talks about institution of proceedings, right? Yes. Institution of workers' comp proceedings. Yes, and that has been expanded. Yes, on the proceedings. Workers' comp proceedings. And that's a state law issue, a pure state law issue as opposed to this other thing, which is there's some federal issues in that one. And the state court judge had to reach a little bit to decide that these were workers' comp proceedings. You'd agree with that? I would agree that she said she took the part that it's entirely factual based on each case and she took the fact that it could be types from J.P. Stephen, types of conduct as well, and said based on the facts, in this case, the employer should have inferred that there were going to be workers' comp proceedings. How about if they came up with cramps? Three different people on three different days came with cramps. The nurse massaged the cramp that was in the forearm, massaged the cramp, the cramp left, and they go back to the line. I don't think that would be a workers' comp injury. So we're going to say that it's retaliation when they make the wrong judgment, when the nurse makes the wrong judgment? When you make the wrong judgment day after day after day, how does she know it's wrong day after day? Because she's made a decision. She testified as a matter of fact. For her, Carpal Tunnel could never be a workers' comp. You're saying she. You're talking about the nurse. But the cramps, you would say, if she made a decision that cramps on the line  I'm going to massage them out, and we go back to the line. Now, she makes that judgment, and she says, I think these hand things are not. She's probably in error, but the question, I think, is whether that's retaliation. The question is the motive. The question is, and that would be for the judge as the finder of fact after listening to all these people and as being a former workers' comp commissioner to decide, was that reasonable for her to say. You're saying the judge was a former workers' comp commissioner? Yes, she was, Your Honor. Is that relevant? I think it is because I think that she knew, had heard these kinds of complaints, knew when you should report, was aware of repetitive trauma being a workers' comp injury, and also there was information that the nurse kept the list of people who were going to be terminated. So it goes to the motive, and that's something that the judge was. Well, that was based on points, right? It was the list. Points were assessed for a lot of different things. I mean, they had to keep that line going or one person off the line ruins the line. And the point system actually, if they had done it properly, would have been fine because it didn't give you a point for a workers' comp injury. I understand, but the point is that the terminations were based on an objective view of the number of points a person had, and when they got to a certain number, they were terminated. Yes, Your Honor. And so some of those points may have been legitimate, some weren't. But when they make a wrong judgment, you're saying, because they got a wrong point in there, it's now retaliatory. And that leap is a little bit difficult, but I think we've heard it more than two minutes. All right, Mr. Stein. I'm going to address the workers' comp issues in my reply. I think, and I apologize for my voice. I have a head cold, so I apologize for that. I think the best example of how the judge got the motivation wrong is, there's a quote that says, but for Taylors, which is the nurse, refusal to allow Basie to visit the company doctor, Basie would not have accumulated excessive attendance points and been discharged. What it appeared to us when we were trying the case is that the focus was on whether the injury was workers' comp or not, whether we made a right decision or a wrong decision. Well, the South Carolinas got a workers' comp board where the disputes as to whether it's a workers' comp claim or not a workers' comp claim goes, so that they have a whole board. Let me ask you, I understand those arguments, and I think we've aired them some with Ms. Bloodgood. There are two employees that don't quite fit the mold. It's Harris and Jamison. Why don't you address their circumstances? Ms. Jamison, we did treat, she did injure herself. We did send her to the company doctor, and we don't dispute that she had an institution of a workers' compensation pursuant to J.P. Stevens. You dispute the causation. I dispute the causation, and in this particular case, Your Honor, what this is is the facts weren't really truly disputed. The motives were. What happened is Ms. Jamison got a Now, all this relates to the bench trial. Yes, all related to the bench trial. There's no really dispute that Ms. Jamison was found by the H.R. director outside the work area and non-break times talking on the cell phone. What Ms. Jamison said is I've got this doctor's note that says I need to give my right shoulder breaks. And Ms. Jamison interpreted that to mean that she could take a break, get up from the workstation, and leave when she wanted. She happened to run into the H.R. manager who told her, no, you're not. Well, Ms. Jamison, believing her interpretation is correct and the H.R. director is wrong, continued to act that way. Third time, he discharged her. Now, what the judge did below in her findings is that she found that the doctor's note that says take breaks to your right shoulder, she interpreted correctly and Mr. Donovan interpreted incorrectly, and therefore her discharge was a pretext. The problem is if you read the decisions, you'll see that she's talking about these. She's making breaks. She's explaining in her decision why Ms. Jamison was taking the breaks and why she was making these calls and why she was out. If it was a factual finding by the trial court judge, what would be our standard of review? The facts are not a problem, Your Honor. She found that Ms. Jamison and Mr. Donovan had a dispute as to what the breaks meant. So the pretext, that's a factual finding, isn't it? It has to, but it's also a legal finding, Your Honor, because she has to find that it's a legal conclusion. Well, you see, when you have a bench trial, the judge is like your jury. I understand. Judge Agee said, what's the standard of review? The problem, Your Honor, is I think that she had a Like us reviewing a jury verdict, we're reviewing the judge's findings of fact and conclusions of law. The problem, I believe, Your Honor, is the legal standard to use was incorrect. The legal standard is that the reason If we're looking at a legal standard, it's de novo. Correct. But if it's a factual finding, it's clearly erroneous. Yes, Your Honor. And we have to look at it in the light most favorable to the judge. Yes, Your Honor. As the finder of fact. Yes, Your Honor. I agree with every bit of what you just said. However, if you read the facts, there's a What she's looking at is she had a good excuse. And the HR manager disagreed with her, and she disobeyed the HR manager. The other thing is, now this is the other thing about Ms. Jameson. Ms. Jameson couldn't do her job already. She was already on light duty. And, in fact, testified it was almost two years later after her termination before she could do the job. And the courts have fundamentally basically said in South Carolina, If you can't do your job, it's not retaliation when you're discharged. So even if she found that was wrong, she did find that the lady couldn't do the job for a long time. She went out retroactively on Social Security total disability. What about the other individual, Mr. Harris?  He was acknowledged workers' comp, was going back, and then put on police full duty. He walked off. She found that he had had an excuse, and therefore it was a pretext. However, Mr. Harris testified that he was unable to do that job. And most telling is that the judge, in acknowledging that he had testified that he could not do the job, he basically testified he could do a desk job. And it was two years before he recovered from what turned out to be a herniated disc. And she said that he didn't say that he couldn't do light duty. In other words, the finding was that there was nothing. He didn't testify that he could do light duty. She just found that he hadn't testified that he could not. So what specifically do you say is the trial judge's error with regard to him? The error is that he was totally disabled, unable to do the job for two years, and therefore was not protected by the workers' comp retaliation because he couldn't do the job. And he so testified. He acknowledged it. He admitted it. It was very straightforward and very honest. So both of these people were out with total disability for over a year, year and a half. Is there any other issues, Your Honors, on particular? Was there any evidence that these two were dismissed because they had filed workers' comp claims? There was disputed evidence. I would have to say there was evidence that Ms. Jamison testified that we thought was hearsay, that somebody told her that Ms. Taylor was going to get rid of her. The problem is Ms. Taylor didn't terminate her. Mr. Donovan did. So there is some hearsay testimony along those lines, Your Honor, as to Ms. Jamison. All right. Is that it? Your Honor, I would just, I think the last one is, and the Horn v. Davis case is the one that fundamentally says there's no right to rehabilitation. And the judge found that there was because we had provided reasonable accommodation to acknowledge worker comp claimants. That when we made a mistake in determining that they were not workers' comp, that they should have been entitled to reasonable accommodation despite the Supreme Court, South Carolina Supreme Court's blunt statement that there is no reasonable period of rehabilitation under the South Carolina workers' comp retaliation provision. Thank you. Thank you. We'll come down and greet counsel and then we'll proceed on to the next. Yeah. And take a brief recess.
judges: Paul V. Niemeyer, Robert B. King, G. Steven Agee